[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 08-16336
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPTEMBER 23, 2009
THOMAS K. KAHN
CLERK

D. C. Docket No. 07-00071-CR-4-SPM-WCS

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CHARLES S. FARIS, III,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(September 23, 2009)

Before MARCUS, WILSON and ANDERSON, Circuit Judges.

PER CURIAM:

Charles S. Faris, III, met an undercover Tallahassee Police Department investigator who posed as "Stephanie," the mother of two fictitious minor girls, in an internet chatroom called "Open Minded Parents." Faris identified himself as a fifty-three year old man from Tallahassee, Florida. In their first chat, he stated his interest in, among other things, young girls and boys. Stephanie responded that she loved her daughters and that she liked watching.

In their second chat, Faris asked Stephanie detailed sexual questions about her daughters. He later arranged by telephone to personally meet Stephanie and her daughters. Stephanie provided him with an address, and, when he arrived, he was arrested.

Faris' apartment was lawfully searched on the day following his arrest, resulting in the seizure of a computer containing 20–30 images of minors engaged in sexual activity. Faris was subsequently charged with violating 18 U.S.C. § 2252A(a)(5)(B), which prohibits possessing child pornography that has been transported in interstate or foreign commerce; and 18 U.S.C. § 2422(b), which prohibits using a facility of interstate commerce to entice a minor to engage in sexual activity. He pleaded guilty to violating 18 U.S.C. § 2252A(a)(5)(B) and was convicted after a jury trial of violating 18 U.S.C. § 2422(b).

Faris appeals both his conviction under 18 U.S.C. § 2422(b) and his 292-

month sentence. He argues that the district court erred by denying his motion for judgment of acquittal and by applying a two-level "undue influence" enhancement under U.S. Sentencing Guideline § 2G1.3(b)(2)(B). For the reasons that follow, we affirm both his conviction and sentence.

## I. CONVICTION

Faris argues that 18 U.S.C. § 2422(b), as applied here, violates both the Commerce Clause and the Necessary and Proper Clause of the U.S. Constitution. Section 2422(b) prohibits using any means of interstate commerce to knowingly persuade, induce, entice, or coerce a minor to engage in "any sexual activity for which any person can be charged with a criminal offense . . . ." 18 U.S.C. § 2422(b). We address Faris' arguments in turn, applying *de novo* review. *See United States v. Reynolds*, 215 F.3d 1210, 1212 (11th Cir. 2000) (per curiam) ("We review the constitutionality of statutes *de novo*.")

*A.     Commerce Clause*

Faris concedes that his internet communications were routed through Virginia. Nonetheless, he argues that the statute, as applied here, violates the Commerce Clause because his internet communications, telephone calls, e-mails, and travel routes were confined within Florida state lines and did not otherwise affect interstate commerce. This argument is meritless.

3

The Commerce Clause provides Congress with the power "[t]o regulate commerce . . . among the several states . . . ." U.S. Const. art. I, § 8, cl. 3. "The Commerce Clause power is plenary." *United States v. Hornaday,* 392 F.3d 1306, 1311 (11th Cir. 2004). It includes the power to regulate and protect the "instrumentalities of interstate commerce," even when the targeted "threat may come only from intrastate activities." *United States v. Lopez*, 514 U.S. 549, 558, 115 S. Ct. 1624, 1629 (1995). It also includes prohibiting the use of commercial instrumentalities for harmful purposes even if the targeted harm "occurs outside the flow of commerce" and "is purely local." *United States v. Ballinger*, 395 F.3d 1218, 1226 (11th Cir. 2005) (en banc).

The internet is "an instrumentality of interstate commerce." *Hornaday*, 392 F.3d at 1311. Congress "has the power to regulate the internet" and "to prohibit its use for harmful or immoral purposes regardless of whether those purposes would have a primarily intrastate impact." *Id.* "Congress may reach and prohibit the use of a telephone or the internet to set up the sexual abuse of children through intermediaries . . . ." *Id.*

Faris' Commerce Clause argument fails for two reasons. First, our precedent forecloses it. We have held that 18 U.S.C. § 2422(b) does not exceed Congress' commerce power. *Hornaday*, 392 F.3d at 1310–11. Second, Faris'

4

argument is inconsistent. He concedes that his internet communications crossed state boundaries but asserts that Congress cannot regulate those interstate communications. Even if none of Faris' communications were routed over state lines, the internet and telephone he used to contact the undercover officer were still "instrumentalities of interstate commerce." *Lopez*, 514 U.S. at 558, 115 S. Ct. at 1629; *Ballinger*, 395 F.3d at 1226. Therefore, 18 U.S.C. § 2422(b) does not, as applied here, violate the Commerce Clause.

B.    *Necessary and Proper Clause*

Faris argues that it is inadequate to invoke the Necessary and Proper Clause to confer authority for the prosecution against him. The Necessary and Proper Clause states that "Congress shall have power . . . [t]o make all laws which shall be necessary and proper for carrying into execution the foregoing powers . . . ." U.S. Const. art. I, § 8, cl. 18. Faris asserts that it is not necessary and proper for Congress to regulate every wholly intrastate activity that involves using a telephone or computer since the Tenth Amendment delegates that responsibility to the states. We disagree.

In a case involving the production and possession of child pornography, "we h[e]ld that 18 U.S.C. § 2252A is a valid exercise of Congress's authority pursuant to the Necessary and Proper Clause to effectuate Congress's power to

5

regulate commerce among the several states." *United States v. Maxwell*, 446 F.3d 1210, 1219 (11th Cir. 2006). In so holding, we affirmed the principle that "Congress [has] substantial leeway to regulate purely intrastate activity (whether economic or not) that it deems to have the capability, in the aggregate, of frustrating the broader regulation of interstate economic activity." *Id.* at 1215.

Faris' use of the internet, an instrumentality of commerce, is sufficient to satisfy 18 U.S.C. § 2422(b)'s interstate commerce element even if he did not use it for economic purposes. Since Congress may prohibit the use of an instrumentality of commerce for harmful purposes, *Ballinger*, 395 F.3d at 1226, the prosecution against Faris is not inconsistent with the Necessary and Proper Clause. And because § 2422(b) does not, as applied to Faris, violate either the Commerce Clause or the Necessary and Proper Clause, the district court did not err by denying his motion for judgment of acquittal.

## II. SENTENCE

Faris argues that the district court erred by applying U.S. Sentencing Guideline § 2G1.3(b)(2)(B)'s two-level enhancement. "We review a district court's application of the guidelines to the facts *de novo* and all factual findings for clear error." *United States v. Kinard*, 472 F.3d 1294, 1297 n.3 (11th Cir. 2006) (per curiam) (citation omitted) (italics added).

6

The guidelines provide a two-level sentence enhancement if "a participant . . . unduly influenced a minor to engage in prohibited sexual conduct . . . ." U.S. SENTENCING GUIDELINES MANUAL § 2G1.3(b)(2)(B). A "minor" can be "an undercover law enforcement officer who represented to a participant that the officer had not attained the age of 18 years." *Id.* § 2G1.3 cmt. n.1(C). "In determining whether subsection (b)(2)(B) applies, the court should closely consider the facts of the case to determine whether a participant's influence over the minor compromised the voluntariness of the minor's behavior." *Id.* § 2G1.3 cmt. n.3(B).

Faris attempts to distinguish his case from *United States v. Root*, 296 F.3d 1222, 1233 (11th Cir. 2002), where we held that "an undercover officer playing the role of a minor victim qualifies as a victim, thereby making an actual victim unnecessary." Faris argues that, unlike the defendant in *Root*, he communicated only with an adult intermediary and not directly with the minor victims, and that he did not use superior resources in doing so.

To be sure, *Root* involved a sentencing enhancement under § 2A3.2(b)(2)(B)(ii), not § 2G1.3(b)(2)(B)(ii). But both provisions, using identical language, provide an enhancement when the defendant "unduly influenced the minor to engage in prohibited sexual conduct . . . ." *Compare* U.S. SENTENCING

7

GUIDELINES MANUAL § 2G1.3(b)(2)(B)(ii) *with* § 2G1.3(b)(2)(B)(ii). Thus, *Root* applies here.

We have rejected the very argument that Faris raises to distinguish his case from *Root*. In *United States v. Murrell*, 368 F.3d 1283 (11th Cir. 2004), the defendant, like Faris, appealed his conviction under 18 U.S.C. § 2422(b). *Id.* at 1284. The defendant tried to distinguish *Root* by noting that he communicated with an adult intermediary, not directly with a minor. *See id.* at 1287.

We found that distinction "[ir]relevant to the disposition of the charges . . . ." *Id.* at 1286. "[N]ot[ing] that the efficacy of § 2422(b) would be eviscerated if a defendant could circumvent the statute simply by employing an intermediary to carry out his intended objective" and "find[ing] . . . direct communication with a minor or supposed minor . . . unnecessary under the text of § 2422(b)," we held that the defendant violated the statute. *Id.* at 1287–88. And "[b]ecause the Sentencing Commission specifically provided that undercover officers are 'victims' for purposes of § 2G1.1, we deduce[d] that the enhancement is directed at the defendant's intent, rather than any actual harm caused to a genuine victim." *Id.* at 1289. Thus, we found "no difference between an undercover officer victim and a fictitious victim" and "the enhancement appli[cable] whether the minor

'victim' is real, fictitious, or an undercover officer." *Id.* *Murrell* forecloses Faris'
distinction.

Similarly, our precedent forecloses Faris' argument that he did not use
superior resources to communicate with the adult intermediary. Like the
defendant in *United States v. Vance*, 494 F.3d 985 (11th Cir. 2007), Faris "used
his knowledge of computers and the internet to contact [a person] whom he
believed would supply minors for sexual conduct." *Id.* at 996. Faris notes that he
merely used his home computer to communicate with the intermediary. His
knowledge of computers and the internet, however, qualifies as a "superior
resource[]." *See id.* Accordingly, the district court did not err by applying §
2G1.3(b)(2)(B)'s two-level enhancement.

Finally, Faris suggests that we overrule *Root* en banc. He notes that two
other circuits have rejected our reasoning in *Root.* The Seventh Circuit criticized
*Root* by suggesting that the *Root* majority "ignored the clear language of the
commentary requiring a court to closely consider the voluntariness of the victim's
behavior." *United States v. Mitchell*, 353 F.3d 552, 561 (7th Cir. 2003).
Declining to follow *Root*, the *Mitchell* court held that a defendant cannot "unduly
influence[] a minor . . . in the case of an attempt where the victim is an undercover
police officer . . . ." *Id*. at 554.

The Sixth Circuit has taken a third position. It characterized the *Root* approach as a defendant-focused inquiry and the *Mitchell* approach as a victim-focused inquiry. *United States v. Chriswell*, 401 F.3d 459, 468 (6th Cir. 2005). The Sixth Circuit shares the Seventh Circuit's concern that the *Root* approach inadequately considers "whether the defendant's actions compromised the voluntariness of the victim's actions." *Id.* (citing U.S. SENTENCING GUIDELINES MANUAL § 2A3.2(b)(2)(B)).

The Sixth Circuit asserts, however, that "the *Mitchell* rationale sweeps unnecessarily broadly." *Id.* "The *Mitchell* court's reasoning," according to the Sixth Circuit, "effectively makes it impossible to apply § 2A3.2(b)(2)(B) in any case of attempt, regardless of whether the victim is an actual child or an undercover agent." *Id.* Finding neither the *Root* nor *Mitchell* approach fully satisfactory, the Sixth Circuit "h[e]ld that § 2A3.2(b)(2)(B) is not applicable in cases where the victim is an undercover agent representing himself to be a child under the age of sixteen." *Id.* at 469.

The Sentencing Commission has addressed the circuit split by proposing Amendment 7 to the Guidelines. Unless Congress acts otherwise, Amendment 7 will take effect on November 1, 2009. Amendment 7 would provide in the Commentary to §§ 2A3.2 and 2G1.3 that the undue influence enhancement "does

not apply in a case in which the only 'minor' . . . involved in the offense is an undercover law enforcement officer." AMENDMENTS TO THE SENTENCING GUIDELINES (May 1, 2009), at 27–28, http://www.ussc.gov/2009guid/20090501_Reader_Friendly_Amendments.pdf. It would also provide in the Commentary to both sections "that '[t]he voluntariness of the minor's behavior may be compromised without prohibited sexual conduct occurring.'" *Id.* at 26.

Although Amendment 7 would resolve the circuit split against our precedent, it has no legal force until Congress adopts it. "The law of this circuit is 'emphatic' that only the Supreme Court or this court sitting en banc can judicially overrule a prior panel decision." *Cargill v. Turpin*, 120 F.3d 1366, 1386 (11th Cir. 1997) (citation omitted). In light of *Root* and its progeny, we must conclude that the district court did not err by applying § 2G1.3(b)(2)(B)(ii)'s two-level enhancement.

### III. CONCLUSION

We affirm Faris' conviction and sentence.

**AFFIRMED.**